## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Sep 30 2020, 8:34 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Megan Shipley
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:
INDIANA DEPARTMENT OF
CHILD SERVICES

Curtis T. Hill, Jr.
Attorney General of Indiana

Monika Prekopa Talbot
Deputy Attorney General
Indianapolis, Indiana

ATTORNEY FOR APPELLEE:
CHILD ADVOCATES, INC.

Dede Kristine Connor
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of R.G., (Minor Child, Child in Need of Services,

and

T.C. (Mother),

*Appellant-Respondent,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner,*

and

Child Advocates, Inc.,

*Guardian ad Litem.*

September 30, 2020

Court of Appeals Case No. 20A-JC-858

Appeal from the Marion Superior Court

The Honorable Rosanne Ang, Magistrate

The Honorable Mark A. Jones, Judge

Trial Court Cause No. 49D15-1911-JC-2974

**Tavitas, Judge.**

# Case Summary

[1]     T.C. ("Mother") appeals from the trial court's dispositional order, following the trial court's adjudication of her minor child, R.G. ("the Child"), as a Child in Need of Services ("CHINS").  We affirm.

# Issues

[2]     Mother raises two issues on appeal, which we restate as:

> I.      Whether the trial court abused its discretion in ordering Mother to participate in certain services.

II.    Whether the trial court's continuation of the Child's kinship placement is contrary to law.

# Facts

[3]    Mother and S.G. ("Father") are the biological parents of the Child, who was born in March 2010. In September 2019, Mother went to Father's workplace, argued with Father, and stabbed Father with a knife. Father required emergency medical treatment. The State filed criminal charges against Mother.

[4]    In November 2019, the Marion County Office of the Department of Child Services ("DCS") received allegations of physical abuse and neglect regarding the Child, who reportedly had a black eye and was frequently ill. On November 21, 2019, DCS family case manager Julie Brown ("FCM Brown") interviewed Mother at Riley Hospital in Indianapolis, where the Child was taken for an examination.

[5]    During the interview, FCM Brown observed bruising near the Child's eye. Mother initially refused to allow the Child to be examined by physicians. A preliminary examination revealed that the Child suffered from neuroblastoma cancer. Although Mother initially refused to allow the Child to be admitted to the hospital and was combative with hospital personnel, Mother relented and the Child was admitted to the hospital that day. Also, during the interview, Mother acknowledged her anger management issues and mental health diagnoses. FCM Brown administered a drug screen to Mother, and Mother tested positive for marijuana use. DCS substantiated the allegation of neglect.

[6] On November 26, 2019, DCS filed a petition alleging that the Child was a CHINS. In addition to the foregoing, the petition alleged the following:

> a. [T.C.], mother of [the Child], has failed to provide the [C]hild with a safe, stable, and appropriate living environment free from substance abuse and with necessary medical care and attention.

> * * * * *

> j. . . . [Mother] stated she has been diagnosed with a mood disorder, post traumatic stress disorder (PTSD), and schizophrenia.

> k. [Mother] is not currently receiving any mental health services, and her untreated mental health issues seriously hinder her ability to care for the [C]hild.

> l. Additionally, in September of 2019, [Mother] stabbed the [C]hild's father, [S.G.], and she currently has pending criminal charges as a result.

> m. Furthermore, Mother reported she is behind on her rent, is fearful of being evicted, has used marijuana recently, and she tested positive for marijuana.

> n. [Father] has not successfully demonstrated an ability and willingness to appropriately parent the [C]hild, and/or he is unable to ensure the [C]hild's safety and well being while in the care and custody of [Mother].

> o. The [C]hild and family are in need of services they are not receiving and are unlikely to receive without the DCS'[s] and the

Court's involvement, and the coercive intervention of the Court is required to ensure the [C]hild's safety and well being.

Mother's App. Vol. II pp. 20-21. The Child was discharged from the hospital in December 2019. At a pretrial hearing on December 6, 2019, Mother requested that the Child be placed with an unspecified relative(s). *Id.* at 50. On or about December 10, 2019, DCS placed the Child with his godmother, N.D.B. ("Godmother"). At a pretrial hearing on January 3, 2020, Father requested relative placement for the Child. The trial court's order on the January 3, 2020 hearing provides, "DCS objects . . . and is willing to consider paternal relatives as possible placement for the [C]hild upon receiving specific information from father." *Id.* at 58.

[7] The trial court conducted a fact-finding hearing on February 21, 2020. Based on Mother's admission that she "need[ed] assistance to maintain a stable and appropriate living environment with adequate medical care[,]" the trial court found DCS's allegations to be true and adjudicated the Child as a CHINS. *Id.* at 62-63. Mother did not admit to any allegations regarding substance abuse or domestic violence.

[8] On March 5, 2020, DCS filed its predispositional report, wherein DCS recommended the continuation of the kinship placement with Godmother. The predispositional report provided, in part, as follows:

2. Placement Recommendation:

a. Identify the specific recommended placement followed by the placement's relationship for each child. If the [C]hild is not currently with the recommended placement, state the reasons(s):
Placement with [J.] and [N.B.], Godparents/Kinship.

b. Describe in what ways the recommended placement is the least restrictive and most appropriate setting:
This placement is least restrictive and most appropriate because it is in a home where the [C]hild is appropriately bonded to the caregivers and had a previous relationship/bond with them prior to the CHINS opening. The [C]hild is able to maintain essential family connections and all of the [C]hild's needs, including his extensive medical needs, are being met.

\* \* \* \* \*

d. Describe in what ways the recommended placement is least disruptive to family life:
The current kinship placement allows for the [C]hild to maintain essential family connections. Placement makes the [C]hild available to supervised parenting time and had a relationship with the [C]hild and [C]hild's mother prior to the opening of the current CHINS. Placement is also very active in the [C]hild's medical needs/care as the [C]hild is currently going though chemotherapy. . . .

e. Describe in what ways the recommended placement provides the least restraint on the freedom of the [C]hild and parent/guardian/custodian:
This placement out of home is a kinship placement that allows for essential family connections to continue. The placement is in Marion county and makes the [C]hild available for parenting time regularly.

f. Describe in what ways the recommended placement provides a reasonable opportunity for participation by the child's parent/guardian/custodian:
Placement in kinship care allows for the [C]hild to maintain essential family connections, participate in supervised parenting time, and currently is providing an environment where the [C]hild's extensive medical needs are being met. It is recommended that this kinship placement continue at this time.

g. Describe, if applicable, in what ways the recommended placement is necessary to be consistent with the safety and best interests of the [C]hild and the community:
The current placement in kinship care is consistent with the safety and best interest of the [C]hild as the home is free of [domestic violence] and there are no concerns of substance abuse or untreated mental health. The placement is appropriate and is currently meeting the needs of the [C]hild while supporting the goal of reunification.

3. Placement with the [C]hild's suitable and willing blood or adoptive relative caretaker, including a noncustodial parent, grandparent, aunt, uncle, or adult sibling is inapplicable in that[ ] no one who has come forward is suitable and willing at this point in time to care for the [C]hild.

*Id*. at 72, 73.

[9] At a dispositional hearing on March 13, 2020, Mother did not object to the continuation of the kinship placement. DCS requested Mother's court-ordered participation in: home-based therapy; random drug and alcohol screens; a psychological evaluation; and a domestic violence intake or assessment and all services and recommendations made as a result of the intake or assessment. Mother objected to DCS's requested services. That same day, the trial court

issued a parental participation order ("PPO"), ordering Mother to complete the requested services and to comply with resulting recommendations. On March 17, 2020, the trial court entered a dispositional order that incorporated the PPO and continued Child's placement with Godmother. Mother now appeals from the dispositional order.

## Analysis

### I.    Services

Mother argues that the trial court abused its discretion in ordering her to submit to random drug and alcohol screens and a domestic violence assessment because: (1) Mother and Father do not cohabitate; (2) "Mother did not admit to marijuana use or domestic violence"; (3) DCS did not prove there was an "ongoing" domestic violence issue; and (4) "there was no evidence presented . . . to demonstrate [Mother's] need for these services."[1] Mother's Br. pp. 10, 13.

Following a CHINS determination and a dispositional hearing, the trial court issues a dispositional order that details the plan of care, treatment, or rehabilitation required to address the needs of the Child. Ind. Code § 31-34-19-10. The trial court's dispositional order must include findings and conclusions pertaining to a parent's need to participate in the plan of care of the Child. I.C. § 31-34-19-10(2).

---

[1] Mother concedes that the record supports the trial court's order that she should participate in home-based therapy and a psychological evaluation. Mother also agrees that she requires mental health treatment.

The CHINS statute provides that, if a trial court has determined that a parent should participate in a program of care, treatment, or rehabilitation for the child, the trial court may order the parent to do the following:

> (1) Obtain assistance in fulfilling the obligations as a parent [ ].
>
> (2) Provide specified care, treatment, or supervision for the child.
>
> (3) Work with a person providing care, treatment, or rehabilitation for the child.
>
> (4) Participate in a program operated by or through the department of correction.
>
> (5) Participate in a mental health or addiction treatment program.

I.C. § 31-34-20-3.

"Although the [trial] court has broad discretion in determining what programs and services in which a parent is required to participate, the requirements must relate to some behavior or circumstance that was revealed by the evidence." *In re A.C.*, 905 N.E.2d 456, 464 (Ind. Ct. App. 2009). This Court has recognized that forcing unnecessary requirements on parents whose children have been determined to be CHINS can set them up for failure and can result in failed reunification of the family and even the termination of parental rights. *Id.* at 464-65.

[14] The record here reveals that Mother stabbed Father during a September 2019 physical altercation. The trial court's order requiring Mother and Father to undergo a domestic violence assessment is, thus, directly related to "some behavior or circumstance that was revealed by the evidence." *Id*. The fact that Mother and Father do not reside together is not material to the discussion of the Child's best interests. As the trial court reasoned at the dispositional hearing:

> . . . [Y]ou guys have a very young child with one another and so the severity of [September 2019] situation I would like to address. Even though it doesn't feel like it right now, the goal of this case is to place [the Child] with an appropriate parent which I'm unable to do if there are such severe incidents that remain unaddressed.

Tr. Vol. II p. 15. Under these circumstances, which transpired mere months before the CHINS action commenced, requiring Mother to undergo a domestic violence assessment was both necessary and not against the logic and effect of the circumstances before the trial court. The trial court did not abuse its discretion by ordering the domestic violence assessment.

[15] Likewise, regarding the trial court's order that Mother should submit to random drug and alcohol screens, the record reveals that Mother admitted to marijuana use and tested positive for THC at the outset of the CHINS investigation. The trial court's order that Mother should submit to drug testing, thus, related to "behavior or [a] circumstance that was revealed by the evidence" regarding Mother. *A.C.*, 905 N.E.2d at 464. The trial court did not abuse its discretion in this regard.

## II. Placement

Mother also argues that the kinship placement with Godmother does not comport with Indiana Code Section 31-34-19-7, which requires DCS to consider placement with a blood-relative before it considers other placement. The record reveals that the predispositional report detailed DCS's reasons for seeking the continuation of the kinship placement with Godmother. At the dispositional hearing, Mother failed to object to DCS's placement recommendation. Mother has, thereby, waived this issue. *See Cavens v. Zaberdac*, 849 N.E.2d 526, 533 (Ind. 2006) ("In order to properly preserve an issue on appeal, a party must, at a minimum, 'show that it gave the trial court a bona fide opportunity to pass upon the merits of the claim before seeking an opinion on appeal.'") (quoting *Endres v. Ind. State Police*, 809 N.E.2d 320, 322 (Ind. 2004)).

# Conclusion

The trial court did not abuse its discretion in ordering Mother to complete random drug screens and a domestic violence assessment. Mother's challenge to the continuation of the kinship placement is waived. We affirm.

Affirmed.

Kirsch, J., and Pyle, J., concur.